Bergan, J. (dissenting).
In reaching a rather unjust result in this case, the court also misapplies the statute (Personal Property Law, former § 33, subd. 2, now General Obligations Law, § 5-1103). That statute provides that an agreement to “discharge ’ ’ an obligation ‘‘shall not be invalid ’ ’ because of absence of consideration if the agreement is in writing signed by the party to whom the obligation is owing.
The “ obligation ” here is $19,290.70 which the son owed to the father-testator’s partnership, or for practical purposes, to the father and mother. That obligation was in plain words and *345 unequivocally discharged by the written instrument of November 17, 1955 in literal accordance with the statute, i.e., "we have * * * received * * * payment in full for money due on house and property’’.
It was signed conformably with the statute by the partnership, by the father and by the mother, and it seems indisputable that thereupon the pre-existing obligation became no longer enforceable as a matter of law. It was in express language discharged.
The only purpose of the statute is to make valid such an agreement to discharge an obligation if it is stated in writing and signed, even though there is in fact no consideration for the discharge. (Radist v. Zidel, 12 A D 2d 648.) In this respect it changed the common-law rule. Therefore, without any consideration, the execution of the instrument of November 17, 1955 discharged and terminated the prior indebtedness.
Even if consideration were required for such an agreement not under seal, as it would have been at common law, there is here a sufficient consideration recited. It is not open to doubt that the formal physical delivery and acceptance of a title deed to land is a good consideration for a contract even if more is left to be done to perfect a symbolic transfer. Whether there was good consideration or not, however, the former obligation as it existed on November 17, 1955 was wiped out in exactly the way the statute provides.
The testator and his son thereafter made new informal arrangements—in effect to reconstitute the discharged debt, in part, by the payment of installments during the remainder of the father’s life. This was not the reinstatement of the same obligation that had been discharged. That former and discharged obligation to pay for goods was unconditional. The new agreement was plainly an oral novation between the parties different in the depth and extent of obligation from the former debt.
The majority opinion here expresses the view that because of the novation, which is concededly different from the original debt, the writing of November 17, 1955 did not extinguish the debt. This view runs against the plain terms of the instrument itself and the effect given to such an instrument by the statute. The later return of the deed and other documents was plainly part of the novation with which the son complied.
*346 The fact the son as executor treated the debt for tax purposes as surviving the testator’s death is not a conclusive admission against him. The findings of both courts on this factual issue have been in his favor and are not open here. The loose procedure followed in this case would require caution in giving adverse effect as an admission to any formal position taken in the case under the management of counsel, even if the question of fact of the effect of admission were open here, which it is not.
If there is one thing clear in this jumbled record, it is that the father wished to treat his son and daughter on a parity. There is clear proof from disinterested witnesses (e.g., his bookkeeper for many years) which has been accepted, that the testator regarded the discharge of the debt of the son and the $20,000 given to the daughter in the will as roughly equivalent.
The result of the decision now being made is that the daughter gets three fourths of the estate and the son one fourth. The majority opinion concedes that the daughter’s “ moral right ” is weak. Her legal right is as weak as her moral right.
The order should be affirmed.
Judges Burke, Breitel and Jasen concur with Judge Scileppi ; Judge Bergan dissents and votes to affirm in a separate opinion in which Chief Judge Full and Judge Gibson concur.
Order reversed, without costs, and matter remitted to the Surrogate’s Court for further proceedings in accordance with the opinion herein.